UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROBERT J. PROPST,

                       Petitioner,

-vs-

SUPERINTENDENT COLVIIN,

                       Respondent.

**No. 1:18-cv-00878-MAT**
**DECISION AND ORDER**

---

## I. Introduction

Robert J. Propst ("Propst" or "Petitioner"), proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is being held in Respondent's custody in violation of his constitutional rights. Petitioner is incarcerated pursuant to a judgment of conviction entered against him on March 2, 2015, following his guilty plea on January 21, 2015, to second-degree robbery in New York State, Genesee County Court (Robert C. Noonan, J., retired). For the reasons discussed below, Propst has not demonstrated entitlement to a writ of habeas corpus. Accordingly, the petition is dismissed.

## II. Background

The conviction here at issue stems from an incident in which Propst allegedly robbed Justin Meli of his wallet at knife point on August 6, 2014, on Pearl Street in the City of Batavia. A Genesee County grand jury returned an indictment charging Propst with Robbery in the First Degree (New York Penal Law ("P.L.") § 160.15(3)), two counts of Grand Larceny in the Fourth Degree

(P.L. § 155.30(4), (5)) and Criminal Possession of a Weapon in the Third Degree (P.L. § 265.02(1)). On January 21, 2015, Petitioner appeared with assigned counsel before Genesee County Court Judge Robert C. Noonan and pleaded guilty to second-degree robbery in full satisfaction of the indictment. In accordance with the plea agreement, Judge Noonan sentenced Propst to a 15-year determinate term of imprisonment.

The conviction was affirmed on direct appeal. People v. Propst, 150 A.D.3d 1697 (4th Dep't), lv. denied, 29 N.Y.3d 1132 (2017). Propst also collaterally attacked his conviction by means of a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 in Genesee County Court (Mohun, J.) ("the 440.10 Court"). The 440.10 Court denied the motion in a written decision and order (SR.288-92).[1]

As grounds for habeas relief, Petitioner asserts that (1) his guilty plea was invalid because he was not competent at the time of the proceedings, and trial counsel was ineffective for failing to seek a competency hearing (Ground One); (2) he was denied his right to counsel at a court appearance on November 13, 2014 (Ground Three); and (3) the trial judge was disqualified from presiding over his case because of his business and familial relationships with members of the Genesee County District Attorney's Office and because the judge assumed a fraudulent identity (Grounds Two, Four, Five, Six, Seven and Eight). Respondent filed an answer and

---

[1] Citations in parentheses to "SR." refer to the page numbers of the two-volume State Court Record filed by Respondent.

memorandum of law in opposition to the petition. Petitioner did not file a reply. The matter is now fully submitted and ready for decision.

## III. Discussion

### A. Petitioner's Alleged Incompetency and Trial Counsel's Failure to Seek a Competency Hearing (Ground One)

Petitioner raises two claims related to his mental competency. First, he asserts that his guilty plea was not knowing, intelligent, and voluntary because he was not competent to understand the plea proceedings. Second, Petitioner argues that his trial counsel was ineffective because his attorney failed to order an examination pursuant to C.P.L. § 730 to determine whether Petitioner was competent to enter a guilty plea. Petitioner raised these claims in support of his December 1, 2017 motion pursuant to CPL § 440.10 to vacate the judgment, and they were denied on the merits.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). For a plea to be voluntary, a defendant must be competent to proceed. See Godinez v. Moran, 509 U.S. 389, 396 (1993) ("A criminal defendant . . . may not waive his right to counsel or plead guilty unless he does so 'competently and intelligently[.]'") (quoting Johnson v. Zerbst, 304 U.S. 458, 468 (1938); citation omitted). The federal standard

for determining competency ask whether the accused has "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and "'a rational as well as factual understanding of the proceedings against him.'" Godinez, 509 U.S. at 396 (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam); internal quotation marks omitted in original). While the "'governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law,' questions of historical fact, including inferences properly drawn from such facts, are in this context entitled to the presumption of correctness accorded state court factual findings under 28 U.S.C. § 2254(d)." Parke v. Raley, 506 U.S. 20, 35 (1992) (quoting Marshall v. Lonberger, 459 U.S. 422, 431 (1983)).

Here, the 440.10 Court found that "the transcripts show that [Propst]'s answers to the Court's questions during the plea colloquy and the sentencing proceedings were coherent and appropriate, showing no indication of mental impairment[.]" Id. (citation omitted). As to the documents submitted by Propst indicating that he has a "dull normal IQ" and "may have had mental health problems during his life," the 440.10 Court found that "[t]hese documents . . . fail to establish that he was incapacitated when he was prosecuted; that he is incapacitated now, or that his plea and appeal waiver were not intelligent, knowing and voluntary." Id. Nor did such documents substantiate his claim that trial counsel "failed him by choosing not to attempt to raise a defense" based on Propst's "mental condition." Id. The 440.10

-4-

Court concluded that trial counsel's failure to request a competency examination pursuant to CPL § 730 did not constitute ineffective assistance because "the record is 'devoid of any evidence that [Propst] was mentally incompetent or suffered from mental disease' at the time he was prosecuted[.]" SR.290 (quotation omitted).

A presumption of correctness applies to the 440.10 Court's factual findings that there was no evidence suggesting Propst had a mental impairment that impaired his competency or that he lacked the capacity to enter a knowing, intelligent and voluntary plea. See Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007) (Title 28, United States Code § 2254(e)(1) "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'") (quotation omitted). Propst has not fulfilled his burden of coming forward with clear and convincing evidence rebutting the presumption of correctness. Indeed, the transcript confirms the correctness of the 440.10 Court's findings, as demonstrated by the excerpts, quoted below, from Judge Noonan's colloquy with Propst:

> THE COURT: Have you consumed any drugs or alcohol today?
> THE DEFENDANT: I take Seroquel[2] at night.
> THE COURT: You take what?
> THE DEFENDANT: Seroquel.
> THE COURT: Is there anything about—are you taking it only in the prescribed dose?

---

[2] Seroquel (quetiapine) is used to treat symptoms of various types of mental illness such as bipolar disorder, depression, and schizophrenia. U.S. Dep't of Health & Human Servs., Nat'l Insts. of Health, https://medlineplus.gov/druginfo/meds/a698019.html (last accessed Apr. 11, 2019).

-5-

> THE DEFENDANT: Yes.
> THE COURT: *And is there anything about the way that affects you that interferes with your ability to understand what's going on here*?
> THE DEFENDANT: *No, sir.*

SR.005 (emphases supplied). Statements such as these during plea colloquy "constitute a formidable barrier in any subsequent collateral proceedings" since "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Propst's "claims regarding his inability to comprehend the plea proceeding and his unpreparedness to enter a plea are belied by the record and are contrary to [his] express representations during the plea." Oyague v. Artuz, 393 F.3d 99, 106 (2d Cir. 2004). Accordingly, the Court gives no credence to his after-the-fact, self-serving assertions.

With regard to Propst's argument regarding the alleged inadequate performance of his trial counsel, it is well established that "a petitioner advancing an ineffective assistance of counsel claim faces a considerable burden." Oyague v. Artuz, 393 F.3d 99, 107 (2d Cir. 2004). "To prevail, a petitioner must demonstrate that his counsel's representation 'fell below an objective standard of reasonableness,' Strickland v. Washington, 466 U.S. 668, 688 (1984), and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 U.S. at 694).

As an initial matter, the Court notes that Propst's contemporaneous statements regarding his satisfaction with counsel's performance belie his present critique of the

representation he received. When Judge Noonan asked if trial counsel had "advised [him] fully of the consequences of this plea[,]" Propst responded affirmatively. SR.010. Propst then confirmed that he had had enough time to talk to [counsel] about it[,]" id., and that he had "confidence in his [counsel's] ability to help [him] on these charges[.]" id. Propst denied any promises being made "to get [him] to plead guilty other than what [he] and [Judge Noonan] have talked about." SR.011. Propst further denied that anyone "forced or coerced [him] into entering this plea[,]" and affirmed that he was "enter[ing] this plea voluntarily of [his] own free will[.]" Id. The Court is entitled to presume the truth of Propst's contemporaneous statements, made in open court, at the time of his plea. Blackledge, 431 U.S. at 74. Propst's belated assertions of "buyer's remorse" do nothing to undermine the Court's conclusion that his guilty plea "represent[ed] a voluntary and intelligent choice among the alternative courses of action open to [him]," North Carolina v. Alford, 400 U.S. 25, 31 (1970) (citations omitted).

With regard to Propst's specific complaint regarding trial counsel's failure to make a motion pursuant to C.P.L. § 730 for a competency examination, the 440.10 Court found that the record was "devoid of any evidence that [Propst] was mentally incompetent or suffered from mental disease" at the time of his criminal proceeding. Accordingly, the 440.10 Court found, trial counsel did not render deficient performance.

In New York, "[a] defendant is presumed to be competent and is not entitled, as a matter of law, to a competency examination unless the court has reasonable grounds to believe that the defendant, due to some mental disease or defect, is incapable of understanding the proceedings against him or her[.]" People v. Woodard, 793 N.Y.S.2d 622, 623 (3d Dep't 2005) (citations omitted). Here, as the 440.10 Court determined, nothing about Propst's verbal statements or behavior at the time of his plea proceeding gave Judge Noonan "reasonable grounds to believe that" Propst, "due to some mental disease or defect, [was] incapable of understanding" the charges against him, the terms and conditions of the plea agreement, or the consequences of pleading guilty. Thus, if trial counsel had made a C.P.L. § 730 motion, there is no reasonable probability that Judge Noonan would have granted it. Accordingly, Propst cannot demonstrate that he was prejudiced by counsel's decision. See Johnson v. Conway, No. 09-CV-0095 MAT, 2011 WL 53165, at *6 (W.D.N.Y. Jan. 7, 2011) (finding no ineffective assistance of counsel where it was "unlikely that . . . a motion [for a trial order of dismissal] would have been successful, there is no reasonable probability that the outcome of petitioner's trial would have been different") (citing United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance."), overruled on other grounds, Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393, 403 n.8 (2003)); Muir v. New York, No. 07 CIV 7573 JGK, 2010 WL 2144250, at *8 (S.D.N.Y. May 26, 2010) (finding that trial counsel's failure to

make a speedy trial motion did not render his assistance ineffective where the motion would have been meritless).

In sum, the 440.10 Court's ruling was a correct interpretation of Federal law and, as such, cannot provide a basis for habeas relief. Therefore, Ground One is dismissed in its entirety.

**B.   Involuntariness of Prior Guilty Pleas and Commission of Fraud on the Public, Court, and Petitioner (Grounds Two and Six)**

As Ground Two, Propst asserts that his guilty pleas in unrelated criminal proceedings in 1999, 2002, and 2012 were involuntary because he was never informed that an individual named "Robert Edward Noonan, Jr.," not Judge Noonan, was the "actual judge" in Genesee County Court. According to Propst, this Robert Edward Noonan, Jr. was "using a fake name, identity, and fake birthdate" to pose as Judge Noonan even though he (i.e., Robert Edward Noonan, Jr.) Was disqualified from serving as a judge because of his age and his familial relations with Lawrence Friedman, William Zickl, Robert Zickl, and Randolph Zickl. Relatedly, as Ground Six, Propst alleges that Robert Edward Noonan, Jr. and Judge Noonan defrauded the public, the courts, and Propst by conspiring to allow this false personation to occur.

First, any habeas claims purporting to attack guilty pleas entered by Propst in 1999, 2002, and 2012 are untimely under the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). Furthermore, Propst is not entitled to avail himself of the doctrine of equitable tolling because he has not demonstrated, nor can he demonstrate, that (1) extraordinary

-9-

circumstances prevented him from timely filing and (2) he exercised reasonable diligence in attempting to do so despite extraordinary circumstances, Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000).

Finally, because the underlying allegations are "clearly baseless," this claim must be dismissed as "factually frivolous[.]" Denton v. Hernandez, 504 U.S. 25, 32–33 (1992) (noting that a court "may dismiss a claim as factually frivolous" if the facts alleged are "clearly baseless," "a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional'") (internal quotations omitted). Without a doubt, the allegations regarding the impersonation of Judge Noonan by Robert E. Noonan, Jr. meet the definition of factual frivolousness. Accordingly, Grounds Two and Six are dismissed.

**C. Denial of Counsel at Pre-Plea Court Appearance (Ground Three)**

Petitioner argues that he was denied his Sixth Amendment right to counsel at a court appearance on November 13, 2014. It is true that, on that date, the assistant public defender ultimately assigned to represent Propst was not in court. However, the Genesee County Public Defender, Jerry Ader, Esq. ("Ader"), was present and informed Judge Noonan that his office would be representing Propst. Ader stated that, in particular, Assistant Public Defender Jamie Welch, Esq. ("APD Welch") would be appearing on Propst's behalf.

At this particular appearance, the only matter discussed was the removal of some of the restrictions imposed upon Propst in a

-10-

existing order of protection. The removal of restrictions was requested by the woman, Dana LoTemple, in whose favor the order of protection had been entered. SR.192-93. Ader noted that the defense, not surprisingly, did not object to Judge Noonan's modification of the order "from stay away to non-offensive conduct," SR.193-94, a less severe restriction on Propst. Judge Noonan then adjourned the matter until November 25, 2014, at which time, APD Welch appeared with Propst. SR.196-97.

"[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process." Tollett v. Henderson, 411 U.S. 258, 267 (1973). "A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.'" United States v. Coffin, 76 F.3d 494, 497 (2d Cir.1996) (quoting Tollett, 411 U.S. at 267). Here, as the Court has already found, Propst pleaded guilty unconditionally while competently represented by counsel. Under Tollett, he is barred from asserting claims relating to events, such as the November 13, 2014 court appearance, that preceded the entry of his guilty plea. Accordingly, Ground Three is dismissed.

D. **Disqualification of Judge Noonan (Grounds Four and Five)**

In Grounds Four and Five for habeas relief, Propst contends that Judge Noonan was disqualified based on his alleged family

-11-

relations to Randolph Zickl, Robert Zickl, and William Zickl and to Lawrence Friedman ("Friedman"), the Genesee County District Attorney. The 440.10 Court denied these claims as meritless, finding that they were based on a fictitious family tree invented for Judge Noonan by Richard Mills ("Mills"),[3] a fellow inmate.

The 440.10 Court found that the familial relationships posited by Propst were "substantially refuted" by a decision issued by Judge Noonan on June 2, 2005, in one of Mills' State criminal cases. There, Judge Noonan explained that the "two Assistant District Attorneys who are alleged by Mills and [Propst] to be [Judge Noonan's] nephews are in fact his first cousins once removed," which "is a fifth degree relationship which does not require recusal" under Rules of the Chief Administrator of the Courts, 22 N.Y. Comp. Code R. & Regs. § 100.3(E)(1)(e). SR.289; see also People v. Molaro, 100 A.D.3d 1426, 1427, 953 N.Y.S.2d 530 (4th Dep't 2012) (finding that county court "properly concluded that recusal of Judge Noonan was not required under Rules of the Chief Administrator of the Courts (22 NYCRR) § 100.3(E)(1)(e) inasmuch as the prosecutor was not 'within the fourth degree of relationship' to Judge Noonan;" as "Judge Noonan's first cousin once removed, the prosecutor was within the fifth degree of relationship" under Advisory Comm. on Jud. Ethics Ops. 07-06 (2007)).

Moreover, New York Judiciary Law § 14 did not require Judge Noonan to recuse himself; that statute mandates

---

[3] Mills, a frequent filer of spurious Federal lawsuits, is well-known to this Court.

-12-

disqualification where, among other things, the judge "is related by consanguinity or affinity to any party to the controversy within the sixth degree." N.Y. Jud. Law § 14. The Assistant District Attorneys referenced by Propst in his motion were not parties to the controversy but rather were public servants representing the People of the State of New York in the criminal action. See N.Y. Crim. Proc. Law § 1.20(31) ("'Prosecutor' means a district attorney or any other public servant who represents the people in a criminal action."); People v. Robinson, 898 N.Y.S.2d 438, 440 (Sup. Ct. 2010) ("[T]he public prosecutor is the representative not of any ordinary party to a controversy but of the ultimate sovereign, the People of the State of New York.") (cited in Molaro, 100 A.D.3d at 1427).

The Court agrees with the 440.10 Court's analysis of the applicable New York State regulations and Judiciary Law. Propst's claims are legally baseless as a matter of State law. More importantly for present purposes, Propst has not made a colorable claim of a Federal constitutional violation. It is beyond debate that "federal habeas corpus relief does not lie for errors of state law[.]" Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (citing Pulley v. Harris, 465 U.S. 37, 41 (1984); Rose v. Hodges, 423 U.S. 19, 21-22 (1975) (per curiam)).

Under clearly established Supreme Court precedent, to prevail on a claim of judicial bias, a petitioner must show that he did not receive a trial "by an unbiased and impartial judge without a direct personal interest in the outcome of the hearing." Ungar v.

Sarafite, 376 U.S. 575, 584 (1964) (citing Tumey v. Ohio, 273 U.S. 510, 523 (1927) (It "certainly violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial *pecuniary* interest in reaching a conclusion against him in his case.") (emphasis supplied); other citation omitted)). When allegations of bias or prejudice are involved, it is "only in the most extreme of cases would disqualification on this basis be constitutionally required. . . ." Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 821 (1986).

Here, Propst does not allege a pecuniary interest in his criminal prosecution on Judge Noonan's behalf; nor does he assert that Judge Noonan harbored a personal bias or prejudice against him. Indeed, Propst complains of no actions taken by Judge Noonan that were adverse to him. As Respondent points out, this is not surprising given that Propst pleaded guilty only two weeks after he was arraigned, and Judge Noonan imposed a sentence in accordance with the plea agreement.

Rather, Propst's argument in support of disqualification is solely based on Judge Noonan's familial relationships with the Genesee County District Attorney and two trial assistants in his office. But the Supreme Court has never held that familial relationships have ever been a constitutional basis for judicial disqualification. See Tumey, 273 U.S. at 523 ("All questions of judicial qualification may not involve constitutional validity.

-14-

Thus matters of kinship . . . would seem generally to be matters merely of [State] legislative discretion[.]") (citation omitted). Because Grounds Five and Six do not present Federal constitutional issues cognizable on habeas review, they must be dismissed.

**E.   Violation of New York Judiciary Law § 471 (Ground Seven)**

In Ground Seven, Propst contends that Judge Noonan and Friedman violated New York Judiciary Law § 471 because he and Friedman were in private practice together in a firm but they failed to dissolve their firm once Judge Noonan was elected, and Friedman continued to prosecute cases before Judge Noonan. See N.Y. Judiciary Law § 471 ("The law partner . . . of a judge shall not practice before him, as attorney or counsellor in any cause, or be employed in any cause which originated before him. A law partner of, or person connected in law business with a judge, shall not practice or act as an attorney or counsellor, in a court, of which the judge is, or is entitled to act as a member, or in a cause originating in that court. . . ."). Even assuming that Petitioner alleged a colorable claim under Judiciary Law § 471, which this Court does not find to be the case, it is of no moment to the instant habeas proceeding. As discussed above, "federal habeas corpus relief does not lie for errors of state law[.]" Lewis, 497 U.S. at 780 (citations omitted). Ground Seven is dismissed.

**F.   Unconstitutionality of Genesee County Assigned Counsel Program (Ground Eight)**

In Ground Eight, Propst asserts that Genesee Conty's assigned counsel program as well as the Genesee County Public Defender's

-15-

Office are "unconstitutional" based on "newly discovered evidence" that Randolph Zickl, the former assigned counsel administrator, had a law firm with his sons, William Zickl, a former assistant district attorney, and Robert Zickl, a current assistant district attorney. According to Propst, this means that "two District Attorney's out of the District Attorney Law Firm [sic] were running the Zickl law Firm with the Assigned Counsel Plan all in one[.]" Petition (Docket No. 1) at 48, ¶ 197. As an initial matter, the Genesee County District Attorney, Lawrence Friedman, prosecuted Propst's case, and neither of the Zickl brothers made any court appearances.

Propst's allegations in support of Ground Eight not only are factually frivolous, they are legally baseless. He cites no Federal constitutional provision or Supreme Court precedent that could possibly support habeas relief, even assuming the truth of his speculative and fanciful allegations. Ground Eight accordingly must be dismissed.

**G. No "Presumption of Correctness" Should Apply to the 440.10 Court's Order (Ground Nine)**

Ground Nine of the Petition alleges that County Court Judge Michael Mohun, the 440.10 Court, "was a private defense attorney secretly acting as a private prosecutor," who was "assisting Genesee County Drug Force to build their cases for prosecution on search warrants," and who was brought in by "Charles Zambito to protect the Noonan-Friedman-Yunker Criminal Empire." Petition at 51. According to Propst, this warrants vacatur of the

-16-

order dismissing his CPL § 440.10 motion and requires the Court to ignore any procedural defaults and presumptions of correctness generally afforded to State court decisions. Id. at 54. This claim, like other grounds in the petition, is factually frivolous and legally baseless, untethered from reality and unsupported by any legal authority. Accordingly, it is dismissed.

**IV. Conclusion**

For the foregoing reasons, Propst's request for a writ of habeas corpus is denied, and the petition (Docket No. 1) is dismissed. The Court declines to issue a certificate of appealability because Propst has failed to make a substantial showing of the denial of a constitutional right, see 28 U.S.C. § 2253(c)(2). The Clerk of Court is directed to close this case.

**SO ORDERED**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   April 11, 2019
         Rochester, New York

-17-